# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHWESTERN DIVISION

| | |
|---|---|
| JILL NATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No.: |
| v. | ) |
| | ) |
| THOMAS E. MOORE, DDS, | ) |
| | ) JURY TRIAL DEMANDED |
| and | ) |
| | ) |
| ROCK DENTAL MISSOURI, LLC d/b/a | ) |
| WESTROCK ORTHODONTICS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

PLAINTIFF Jill Nation, for her complaint for dental negligence under Missouri Revised Statutes Section 538.210, states and alleges as follows.

## PARTIES AND VENUE

1.  Plaintiff Jill Nation is a citizen of Mound City, Kansas. At all times relevant to this case, Jill was a citizen of the State of Kansas.

2.  Defendant Thomas E. Moore, DDS is a licensed dentist and orthodontist practicing in the State of Missouri. He is a citizen of Missouri. Dr. Moore may be served at the address indicated in the caption.

3.  Dr. Moore has five clinic locations. At all relevant times, Jill received care and treatment from Dr. Moore at his clinic in Nevada, Vernon County, Missouri.

4.  Rock Dental Missouri, LLC d/b/a Westrock Orthodontics ("Westrock") is a Missouri company registered to do business in the State of Missouri with its principal office in

Springfield, Missouri. None of the members of Westrock is a citizen of Kansas. Westrock is part of a network of dental providers located in Missouri and Arkansas.

5. Westrock touts itself as a group of progressive private practitioners that have banded together to provide the highest quality of care possible through the sharing of ideas, techniques, and management skills utilizing the advantage of doctor-to-doctor consultation. This group of providers holds itself out as being committed to one common goal – increasing the standard of quality patient care so as to provide the highest standard of care.

6. Westrock advertises that its group of doctors support each other with difficult cases, and there are specialists at Westrock available for consultation. Westrock also represents that it has partnerships that include peer reviews, continuing education, and increased earning potential for its dentists.

7. Westrock advertises that its dentists practice "exceptional general and specialty dentistry in state-of-the-art offices using the most up-to-date dental equipment and technology."

8. Westrock represents to the public that it has a "Quality Assurance Program" with respect to its doctors that "helps address areas in need of improvement, and then highlight those of exceptional performance through Peer Review, Continuing Education, Credentialing and the support of a Dental Executive Committee."

9. Westrock represents that its "Doctor Executive Committee" exists "to provide key oversight of quality and standard of care, maintain defined clinical guidelines for all practices, evaluate the peer review findings, and define continuing education needs." The committee acts "as support for the rest of the team, stepping in and offering guidance in moments of need" with the goal of "quality assurance and always putting the patient first."

10. Westrock advertises that all Westrock doctors, including Dr. Moore, work diligently as a team toward the common goal of quality care.

11. Dr. Moore's clinics, including the clinic in Nevada, Missouri, are Westrock clinics.

12. At all relevant times, Dr. Moore was in a joint venture with Westrock. Alternatively, Dr. Moore was an employee, agent, and/or member of Westrock. Westrock is vicariously liable for the acts and omissions of Dr. Moore, who acted in the course and scope of his employment/agency/partnership/membership/joint venture with Westrock in treating Jill.

13. This Court has jurisdiction court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and all defendants. The amount in controversy exceeds $75,000, exclusive of interests and costs.

14. Venue is proper in the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the acts or omissions giving rise to the claims occurred, and because Defendant Moore resides within the Western District of Missouri.

## FACTS

15. In 2015, when Jill was 15 years old, her left front tooth was knocked out in a softball accident.

16. Jill went to Westrock Orthodontics in Nevada, Missouri and sought care and treatment for the injury from Dr. Thomas Moore.

17. Dr. Moore undertook to treat Jill and developed a long-term plan that included using braces to move her teeth such that her left lateral incisor would become her new front

tooth. Dr. Moore stated that at the end of his treatment, a cosmetic dentist would build the incisor to look like a front tooth.

18. Jill, a teenager, trusted Dr. Moore's judgment and, along with her parents, agreed to the plan of care.

19. Dr. Moore placed braces on Jill's teeth. Dr. Moore warned Jill that she could expect to experience lock jaw, pain and headaches, which he claimed were normal.

20. Jill did experience lock jaw, pain, and headaches and has continually experienced these symptoms and more throughout and since the course of her treatment with Dr. Moore.

21. Dr. Moore rendered continuing care to Jill according to the long-term plan he had developed. Jill expressed concern that her remaining front tooth was had become situated beneath the center of her nose from the braces. Dr. Moore reassured Jill this was part of the process and a cosmetic dentist could make her smile beautiful at the end of his treatment. Meanwhile, Dr. Moore applied a temporary filling on the tooth to improve its appearance.

22. Throughout his care and treatment, Dr. Moore used flattery and repeated assurances to convince Jill his plan of care was appropriate and reasonable. Because Dr. Moore held himself out as an educated and experienced orthodontist and was part of a network promising high quality dental care, Jill trusted and believed him.

23. Dr. Moore referred Jill to an oral surgeon to have healthy teeth pulled as part of his plan of care.

24. In late October 2021, after making a final adjustment on Jill's braces, Dr. Moore told Jill it was time for her to seek cosmetic treatment.

25. On November 9, 2021, Jill saw Karl Jobst, DDS, in Grove, Oklahoma to establish care and address her cosmetic dentistry needs.

26.     Dr. Jobst was horrified by the orthodontic work done by Dr. Moore. Imaging by Dr. Jobst revealed that, while Jill's bones were still developing as a teenager, Dr. Moore had permanently altered not only Jill's bite, teeth and jaw, but also Jill's skull, causing ongoing and permanent pain, distortion, and dysfunction. In his opinion, the defendants made Jill a dental cripple.

27.     Dr. Jobst informed Jill that Dr. Moore's plan of care and his promises were below the standard of care, and this was far more serious than a cosmetic dentistry issue. This was Jill's first notice that the treatment was negligent, that she could not be repaired cosmetically, and that her pain and problems were not the normal side effects of wearing braces.

28.     Dr. Jobst told Jill she would need extensive dental and orthodontic care to try to undo some of the damage done by the defendants, but she would never be normal. Dr. Jobst told Jill he could not attempt any corrective care and treatment without first seeing Jill's records from Dr. Moore and Westrock.

29.     Westrock contacted Jill and told her she needed to return to the Nevada clinic for "exit counseling." Jill returned on December 3, 2021 and met with Dr. Moore in his office. Despite the fact Jill was still wearing braces, Dr. Moore told Jill he was terminating his care. No reason was given, and no referrals for further care were provided.

30.     During that meeting, Jill asked for a copy of all dental records, which were sitting on Dr. Moore's desk in front of her. She was told "no" and that the records belonged to Dr. Moore and the clinic.

31.     Upon learning that Jill was refused her dental records, Dr. Jobst submitted several properly-executed authorizations to obtain the records so he could start treating Jill, but the defendants also refused Dr, Jobst's requests.

32. Dr. Jobst advised Jill to file a complaint with the Missouri Dental Board. Jill filed such a complaint in March of 2022.

33. The defendants' refusal to release Jill's records amounts to the intentional concealment of evidence of negligence. It also prevents Jill from obtaining care and treatment for the injuries and damages the defendants have caused.

34. In December 2021, Jill received an unsolicited phone call from Westrock. The voicemail stated, "Hi, this call is for Jill Nation. This is Westrock Orthodontics. I am calling regarding a refund that is due you. We need you to call us back at (816) 966-0788 to confirm your email address and your mailing address. If you could do so at your earliest convenience, we'd appreciate it. Thank you and have a great day."

## COUNT I – DENTAL NEGLIGENCE (§ 538.210 RSMo)
### Defendant Thomas E. Moore

35. The preceding paragraphs are incorporated herein.

36. Dr. Moore had a duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession with respect to Jill Nation.

37. Dr. Moore breached that duty in the following respects:

   a. Developing and implementing a plan of care not accepted within the dental/orthodontics community;

   b. Experimenting on Jill;

   c. Rendering Jill a dental cripple;

   d. Bracing and moving Jill's teeth in an inappropriate manner;

   e. Failing to maintain Jill's front tooth gap until an implant could be installed;

   f. Permanently moving and distorting Jill's skull and facial bones;

   g. Ordering the needless removal of permanent teeth;

h. Abandoning Jill as a patient without cause and before treatment had concluded;

i. Denying access to her dental records;

j. Falsely reassuring Jill over the years that his care was appropriate;

k. Failing to refer Jill to a specialist or obtain guidance from the other doctors at Westrock;

l. Failing to order proper x-rays and/or interpret imaging correctly;

m. Failing to recognize that the severity and duration of symptoms Jill was having were not normal;

n. Failing to observe that Jill's face, mouth, jaw and skull were distorted and disrupted as a result of his care;

o. Failing to inform Jill of the results of x-rays showing the distortion and disruption of her mouth, jaw, skull, and facial bones;

p. Allowing Jill to experience years of pain, lock jaw and headaches while reassuring her such symptoms were normal;

q. Failing to contact or consult any other dentist in the Westrock network to review his plan and ensure it was of the highest standard of care;

r. Concealing his negligence from Jill; and

s. Such other particulars as may be revealed during discovery.

38. Dr. Moore's negligent acts as detailed above directly caused or directly contributed to cause Jill's damages.

39. As a proximate result of Dr. Moore's negligence, Jill has suffered cranial rhythm distortion, otic and optic asymmetry, the loss of permanent teeth, mid-facial deformity and deficiency, torquing of her jaw and facial bones, disfigurement, bite distortion, abnormal tooth

arrangement, severe TMJ problems, degenerative joint disease, headaches, pain, humiliation, embarrassment, discomfort, emotional distress, pain and suffering, and ongoing delay in corrective treatment, all of which have been painful and permanent, which have caused lost wages, which will continue into the future, and which will require costly care and treatment.

WHEREFORE Jill Nation prays for judgment in her favor on Count I, for her noneconomic and economic damages in excess of $75,000, costs, pre-and post-judgment interest, and all other relief the Court deems just.

## COUNT II – DENTAL NEGLIGENCE (§ 538.210 RSMo)
### Defendant Westrock

40. The preceding paragraphs are incorporated herein.

41. Westrock had a duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of its profession with respect to Jill Nation.

42. Westrock breached that duty in the following respects:

   a. Failing to follow its own guidelines and procedures to ensure that Dr. Moore was providing the highest quality care to Jill;

   b. Failing to have processes and procedures in place to assess and ensure exceptional dental care to patients such as Jill;

   c. Failing to collaborate with Dr. Moore regarding Jill;

   d. Failing to perform peer review and quality review of Dr. Moore's care and treatment;

   e. Failing to ensure Dr. Moore possessed the proper skills to provide exceptional care;

   f. Failing to supervise Dr. Moore;

   g. Failing to discover and intervene in Dr. Moore's plan of care with Jill;

h. Allowing Dr. Moore to use techniques on Jill outside the standard of care and outside Westrock's standards;

i. Failing to engage the Doctor Executive Committee to ensure quality in Jill's care;

j. Failing to implement the quality assurance program with respect to Dr. Moore and Jill;

k. Failing to heed red flags, including that Jill was in braces for more than six years;

l. Sanctioning and/or ratifying the acts and omissions of Dr. Moore;

m. Having inadequate policies and controls in place to prevent negligent care and treatment;

n. Concealing the negligence of Dr. Moore by failing to provide duly-requested copies of Jill's dental records;

o. Failing to inform Jill of the results of x-rays showing that the defendant's care had caused permanent skull changes and damage;

p. Failing to prohibit use of experimental orthodontic techniques by its doctors;

q. Permitting Dr. Moore to experiment on Jill; and

r. Such other particulars as may be revealed during discovery.

43. Westrock's negligent acts as detailed above directly caused or contributed to cause Jill's damages.

44. As a proximate result of Westrock's negligence, Jill has suffered cranial rhythm distortion, otic and optic asymmetry, the loss of permanent teeth, mid-facial deformity and deficiency, torquing of her jaw and facial bones, disfigurement, bite distortion, abnormal tooth arrangement, severe TMJ problems, degenerative joint disease, headaches, pain, humiliation, embarrassment, discomfort, emotional distress, pain and suffering, and ongoing delay in

{00222780.DOCX}                                    9
Case 3:22-cv-05063-MDH   Document 1   Filed 08/31/22   Page 9 of 14

corrective treatment, all of which have been painful and permanent, which have caused lost wages, which will continue into the future, and which will require costly care and treatment.

WHEREFORE Jill Nation prays for judgment in her favor on Count II, for economic and noneconomic damages in excess of $75,000, for costs, for pre-and post judgment interest, and all other relief the Court deems just.

### COUNT III – JOINT ENTERPRISE
### All Defendants

45. Plaintiff incorporates the preceding paragraphs herein.

46. At all relevant times, the defendants were in a joint enterprise.

47. The defendants had an express or implied agreement to provide orthodontic and dental care in a collaborative team environment using agreed techniques to assure quality.

48. The common purpose to be carried out by the defendants was the provision of purported high-quality orthodontic care and treatment for profit.

49. The defendants had shared interests in providing orthodontic care and making a profit and mutually benefitted through sharing ideas, techniques, and management skills as well as communicating directly to one another. They further shared an interest in supporting one another with difficult cases and referring difficult cases to specialists available for consultations.

50. The defendants had an equal voice in the direction of the orthodontic care rendered within the Westrock group in that the dentists therein welcomed and were to make use of the input, consultation, and sharing of ideas by the other doctors in the Westrock network. Westrock also had a Doctor Executive Committee that had oversight and an equal voice in determining whether care was within prescribed guidelines.

51. The defendants are, therefore, liable for each other's acts and omissions regarding Jill Nation, and are jointly liable for each other's acts and omissions.

WHEREFORE Jill Nation prays for judgment in her favor on Count III, for her actual damages in excess of $75,000, costs, pre-and post-judgment interest, and all other relief the Court deems just.

### COUNT IV – CONVERSION
### All Defendants

52. Plaintiff incorporates the preceding paragraphs herein.

53. Jill is entitled to possess a copy of her dental records under Section 191.227 RSMo.

54. Jill individually and through her treating dentist Dr. Jobst properly requested a copy of her records multiple times.

55. The defendants refuse to provide the records and have wrongfully exercised complete control over and possession of the records.

56. Jill has been deprived of the right of possession of her dental records.

57. Such conduct by the defendants directly caused or contributed to cause Jill's damages in that defendants' refusal has delayed necessary and appropriate care.

WHEREFORE Jill Nation prays for judgment in her favor on Count IV, for her actual damages in excess of $75,000, costs, pre-and post-judgment interest, and all other relief the Court deems just.

### COUNT V – NEGLIGENCE (Medical Records)
### All Defendants

58. Plaintiff incorporates the preceding paragraphs herein.

59. Jill individually and through her treating dentist Dr. Jobst properly requested a copy of her records multiple times.

60. The defendants had a duty to use ordinary care to provide Jill a copy of her dental records, to which she was statutorily entitled under Section 191.227 RSMo.

61. The defendants breached their duty by refusing to release a copy of the records.

62. Such negligence directly caused or contributed to cause Jill's damage in that defendants' refusal has delayed necessary and appropriate care.

WHEREFORE Jill Nation prays for judgment in her favor on Count V, for her actual damages in excess of $75,000, costs, pre-and post-judgment interest, and all other relief the Court deems just.

## COUNT VI – MMPA VIOLATION (§407.025 RSMo)
### All Defendants

63. Plaintiff incorporates the preceding paragraphs herein.

64. Plaintiff purchased merchandise for personal purposes in the form of dental care services from the defendants.

65. The defendants used fraud, false pretense, false promise, misrepresentation, and the concealment or suppression of material facts in providing the services – including but not limited to misrepresenting the collaborative nature of Westrock's care and concealing evidence of negligence by refusing to provide Jill's dental records.

66. Jill acted at all times as a reasonable consumer would in light of all circumstances and reasonably relied on the fraudulent actions of the defendants.

67. As a direct result of the defendants' unlawful practices, Jill suffered damages.

WHEREFORE Jill Nation prays for judgment in her favor on Count VI, for her actual damages in excess of $75,000, attorney's fees, costs, pre-and post-judgment interest, and all other relief the Court deems just.

## STATUTE OF LIMITATIONS

68. Jill's dental negligence claims against the defendants are timely filed under Section 516.105 RSMo based on the continuing care rule, the discovery rule, and/or the exception under Section 516.105.1(2) for "negligent failure to inform the patient of the results of medical tests."

69. Jill was a minor when she began treating with the defendants. She did not turn 18 until April 2018.

70. The defendants' care of Jill was ongoing and continuous.

71. The defendants last adjusted Jill's braces and stopped treating her in October 2021. Thus, Jill's cause of action accrued, at the earliest, in October 2021, when the continuing care ended.

72. Jill first learned in November 2021, when she sought care from Dr. Jobst, that she was the victim of negligence and suffered injuries and losses as a result. Thus, alternatively, her cause of action accrued in November 2021.

73. Upon information and belief, there will also be evidence the defendants negligently failed to inform Jill about the results of x-rays showing damage they caused, which x-rays the defendants refuse to provide to Jill or her treating dentist. This failure is ongoing and further tolls the statute of limitations into the future. § 516.105.1(2).

74. Under any of the above scenarios, the two-year statute of limitations under Section 516.105 would not run until, at the earliest, October 2023. Thus, Jill's dental negligence claims are timely filed.

75. Plaintiff's remaining claims are subject to a five-year statute of limitation and are, therefore, timely filed. Section 516.120(1) RSMo.

**JURY TRIAL DEMANDED.**

Respectfully submitted:

*/s/ Paula L. Brown*
Paula L. Brown                           MO # 45870
Scott R. Ast                                MO # 51699
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, MO 64106-2197
Telephone: (816) 268-9400
Facsimile: (816) 268-9409
Email: pbrown@sakg.com
             sast@sakg.com

*Attorneys for Plaintiff*