IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| JILL NATION, | ) |
|       Plaintiffs, | ) |
| vs. | ) Case No. 3:22-cv-05063-MDH |
| THOMAS E. MOORE, DDS, et. al., | ) |
|       Defendants. | ) |

## ORDER

Before the Court are three Motions for Summary Judgment from Defendant Thomas E. Moore, DDS ("Dr. Moore"); Thomas E. Moore, DDS P.C. ("the Corporation."); and Rock Dental Missouri, LLC, d/b/a Westrock Orthodontics ("Westrock") (collectively, "Defendants"). Also before the Court is Dr. Moore and the Corporation's Motion to Strike. For reasons herein, Westrock's Motion for Partial Summary Judgment (Doc. 91) is **GRANTED IN PART AND DENIED IN PART**; Dr. Moore, the Corporation, and Westrock's Motion for Summary Judgment (Doc. 89) is **GRANTED IN PART AND DENIED IN PART**; and Dr. Moore and the Corporation's Motion for Summary Judgment Pursuant to Subsection 407.025.3 of the Missouri Revised Statutes (Doc. 106) is **MOOT.** Likewise, Plaintiff's Motion to Strike is **MOOT**.[1] Within the Amended Complaint, Count One remains unaffected; Count Two is dismissed to the extent it alleges Westrock is vicariously liable for Dr. Moore's conduct before November 10, 2021; Count

---

[1] Dr. Moore and the Corporation's Motion to Strike (Doc. 125) asks this Court to strike portions of Plaintiff's response to Dr. Moore and the Corporation's Motion for Summary Judgment Pursuant to Subsection 407.025.3 of the Missouri Revised Statutes. Because this Court has ruled that this Motion for Summary Judgment (Doc. 106) is moot, however, the Motion to Strike is likewise moot.

1

Three is dismissed to the extent it alleges Westrock is vicariously liable for Dr. Moore's conduct before November 10, 2021; Count Four remains unaffected; Count Five is dismissed in its entirety; and Count Six is dismissed in its entirety.

## BACKGROUND

This matter generally involves allegations of negligent dental care as well as negligent and/or intentional efforts to ensure Plaintiff Jill Nation ("Plaintiff"), a Kansas resident, could not obtain medical records. Specifically, Plaintiff alleges that a 2015 softball accident caused Plaintiff to lose one of her two front teeth. Plaintiff was fifteen years old at the time of the incident. Plaintiff then sought dentistry and orthodontic care from Dr. Moore at his clinic in Nevada, Missouri. Plaintiff contends Dr. Moore advised Plaintiff that, rather than simply replacing a missing front tooth, Plaintiff should undertake a years-long plan to shift all of Plaintiff's upper teeth, so that her left incisor would eventually take the place of the missing front tooth. Once the left incisor became the front tooth, according to Plaintiff's allegations about Dr. Moore's plan, Plaintiff would then be referred to an oral surgeon who would reconstruct the left incisor to appear more akin to a natural front tooth. Plaintiff and Dr. Moore undertook the years-long plan of shifting Plaintiff's upper teeth to accommodate the missing front tooth. Plaintiff began orthodontic care with Dr. Moore and the Corporation during 2015 and Dr. Moore's final adjustment of Plaintiff's braces occurred on or about November 1, 2021. On or about November 9, 2021, Dr. Moore and the Corporation entered into an agreement with Westrock, a group of dental and orthodontics clinics operating in Missouri and Arkansas, whereby Westrock purchased the Corporation and hired Dr. Moore as a Westrock employee.

Plaintiff contends that in November 2021, after about six years of extensive dental work pursuing Dr. Moore's plan, Plaintiff was referred to Dr. Karl Jobst, DDS, in Grove, Oklahoma for cosmetic dentistry needs. Dr. Jobst was "horrified," Plaintiff contends, when he saw the results of Dr. Moore's work. Plaintiff contends that Dr. Moore's work permanently altered Plaintiff's bite, teeth, jaw, and skull, causing pain, distortion, and disfunction. Plaintiff alleges Dr. Jobst advised Plaintiff that she would need extensive dental work in effort to counteract the permanent pain and disfigurement caused by Dr. Moore. Further, Plaintiff alleges that Dr. Moore, the Corporation, and Westrock continually refused to provide Plaintiff with her medical records following repeated requests from Plaintiff and Dr. Jobst. Plaintiff's Amended Complaint alleges six counts altogether: Count One alleges dental negligence against Dr. Moore and the Corporation; Count Two alleges dental negligence against Westrock; Count Three alleges joint enterprise against all Defendants; Count Four alleges conversion against all Defendants; Count Five alleges negligence pertaining to the unavailability of medical records against all Defendants; and Count Six alleges violations of Missouri's Merchandising Practicing Act ("MMPA") against all Defendants.

**STANDARD OF REVIEW**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*,

Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

### I. Westrock's Partial Motion for Summary Judgment (Doc. 91)

In its Partial Motion for Summary Judgment, Westrock argues for judgment as a matter of law: 1) on Count Two's dental negligence allegation for all acts occurring before November 10, 2021 due to lack of vicarious liability; and 2) on Count Two's dental negligence claim pertinent to Westrock's alleged failure to engage the Doctor Executive Committee due to lack of causation evidence. This Court will address each claim in turn.

#### a. Vicarious Liability

Westrock argues for summary judgment on Count Two's dental negligence claim based on an alleged lack of vicarious liability for all of Dr. Moore's conduct prior to November 10, 2021, the date on which Dr. Moore formally became a Westrock employee, following the completion of an asset purchase agreement the day prior. Westrock does not contend there was no vicarious liability on November 10, 2021 and later. To establish a joint venture under Missouri law, plaintiffs must show: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 331–32 (Mo. 2009) (citations omitted). Plaintiff contends that material disagreement exists as to each element. In support, Plaintiff points to an earlier letter of intent between the two parties, a kickoff call on or

4

about September 29, 2021, Dr. Moore providing access to his patient software system on or about October 1, 2021, and an onboarding process around October 27, 2021. Further, Westrock's corporate representative testified that, prior to the execution to the letter of intent, Westrock and Dr. Moore negotiated general financial terms of the purchase. (Doc. 105-5 at 8). While this evidence may collectively suggest a certain level of agreement and/or common purpose between Westrock and Dr. Moore prior to formal execution of the asset purchase, Plaintiff has failed to establish the existence of the second two elements of a joint venture: community of pecuniary interests and equal right of control.

As to pecuniary interest, "the mere fact that both parties have an economic interest in the activity does not make them joint venturers…The community of pecuniary interest requires that the parties have a right to share in the profits and a duty to share in the losses." *Hatch v. V.P. Fair Found., Inc.*, 990 S.W.2d 126, 138 (Mo. Ct. App. 1999). Even assuming Westrock and Dr. Moore discussed and identified certain financial terms of Westrock's future purchase of the Corporation before November 10, 2021, this proves insufficient to show that Dr. Moore and Westrock shared in one another's profits and losses prior to the formal purchase, indicating absence of community of pecuniary interest.

As to equal right to control, Plaintiff must put forth, "some evidence of the parties participating and having control over the enterprise, whether that be joint or several control." *Bader Farms, Inc. v. BASF Corp.*, 39 F.4th 954, 968 (8th Cir. 2022) (citations omitted). More specifically, the right to control must be within "the business venture or undertaking in which [the defendant] is engaged." *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 388 (Mo. Ct. App. 1999) (citations omitted). As to control, Plaintiff contends, "Dr. Moore and Rock Dental had equal control in the direction of due diligence necessary to achieve their goal and execute the

5

contracts by November 10, 2021. Each party exercised some degree of control over various aspects of the due diligence and onboarding process." (Doc. 105 at 24).

Even assuming, *arguendo*, Plaintiff's claim is true, exercising control over a goal to execute an asset purchase by a certain date proves insufficient to establish requisite control. To establish a joint enterprise, Plaintiff must show by a preponderance of the evidence that the parties exercised control over the particular business with which the enterprise was engaged, namely orthodontics. The record before this Court lacks any suggestion, let alone evidence, that prior to November 10, 2021, Dr. Moore or Westrock exercised control over the other's decisions regarding patients' orthodontic care and treatment. Accordingly, Plaintiff has failed to establish vicarious liability for events prior to November 10, 2021.

Though Westrock framed its argument about vicarious liability strictly in terms of its impact on Count Two's negligence allegations, this Court's finding that Westrock is not vicariously liable for Dr. Moore's actions prior to November 10, 2021 has broader implications. The Amended Complaint's Count Three, for example, brings a single charge of joint enterprise against all Defendants, alleging "at all relevant times the defendants were in a joint venture." (Doc. 36 at ¶ 48). Because Westrock and Dr. Moore were, however, not in a joint venture prior to November 10, 2021, Count Three against Westrock is dismissed to the extent its allegations correspond to events occurring before November 10, 2021.

Similarly, this Court's finding about absence of joint enterprise between Dr. Moore and Westrock bears on Count Six, which alleges violations of the MMPA against all Defendants. In relevant part, Count Six states the following.

6

> The defendants used fraud, false pretense, false promise, misrepresentation, and the concealment or suppression of material facts in providing the services – including but not limited to misrepresenting the collaborative nature of Westrock's care and concealing evidence of negligence by refusing to provide Jill's dental records. Jill acted at all times as a reasonable consumer would in light of all circumstances and reasonably relied on the fraudulent actions of the defendants. (Doc. 36 at ¶¶ 67, 68).

Generally, the MMPA seeks to protect consumers by creating a private right of action for certain unlawful business practices connected to sales. The relevant portion of the statute reads as follows.

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action…to recover actual damages. RSMO § 407.025.1(1).

In 2020, the Missouri Legislature amended the MMPA to include a provision instructing, "any person seeking to recover damages shall establish…that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages." RSMO §407.025.1(2). In effect, the 2020 amendments appear to overrule Missouri precedent, cited by Plaintiff, previously finding, "the MMPA does not require that an unlawful practice cause a purchase." *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009). The newly-added reliance subsection, however, requires that a plaintiff show that a reasonable person would be induced into a purchase, not that the plaintiff him or herself in fact relied on the deceptive practice. *See also Diesel v. Mariani Packing Co., Inc.*, 2024 WL 1674520, at *5 (E.D. Mo. Apr. 18, 2024) (2020 MMPA amendment requires showing reasonable person would rely on the unlawful act to enter into transaction). Regarding economic loss, Missouri courts typically apply the "benefit of the bargain" rule, which awards a successful plaintiff with the difference between the value of the product advertised and the product received. *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022) (citations omitted). The 2020 MMPA amendments also

7

require plaintiffs establish, "Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." RSMO 407.025.1(2)(c).

The transaction at the center of Plaintiff's MMPA claim is the purchase of orthodontic services for Plaintiff. Tracie Nation, Plaintiff's mother, entered a contract with Dr. Moore around October 29, 2015, whereby Dr. Moore was to provide professional orthodontic services, while Plaintiff owed a total of $4,635.00. (Doc. 104 at ¶¶ 27, 29). Though the exact date remains uncertain, Tracie Nation believes she paid the balance of Dr. Moore's fee no later than 2017. (Doc. 104 at ¶ 33). No part of the record suggests Plaintiff made an additional purchase after completing payment as described in the 2015 contract. Rather, Plaintiff's pleadings and relevant briefing make clear the sole purchase at issue stems from the 2015 contract, payment for which was completed no later than 2017.

Representations by Westrock, misleading or otherwise, cannot relate to Plaintiff's 2015 purchase, or a purchase by any reasonable consumer, of orthodontic services from Dr. Moore, as Dr. Moore and Westrock were not in a joint enterprise prior to November 10, 2021. The record offers no indication whatsoever that Plaintiff and Westrock had any sort of dealings, correspondence, or even knowledge of one another prior to 2021, long after Dr. Moore and Plaintiff executed a contract for Plaintiff's orthodontic care.

For these reasons, this Court finds Westrock is not vicariously liable for Dr. Moore's conduct before November 10, 2021. Summary judgment is therefore entered in favor of Westrock for all allegations about Dr. Moore's conduct in Counts Two and Three occurring before November 10, 2021 and in favor of Westrock as to Count Six in its entirety.

### b. Dental Negligence for Failure to Engage the Doctor Executive Committee

Plaintiff claims in Count Two that Westrock was negligent in part because it failed to engage the Doctor Executive Committee, part of Westrock's quality assurance program that works to "provide key oversight of quality and standard of care, maintain defined clinical guidelines for all practices, evaluate the peer review findings, and define continuing education needs." (Doc. 36 at ¶ 11). Westrock contends that Plaintiff has failed to put forth evidence that establishes a causal link between failure to engage the Committee and any alleged injuries Plaintiff suffered. Westrock acknowledges that Plaintiff has disclosed Dr. John Truitt, DDS as an expert witness in this matter, but argues that Dr. Truitt lacks expertise to establish requisite causality between injuries and failure to engage the Committee. Defendants have filed a joint *Daubert* motion seeking to exclude testimony from Dr. Truitt. (Doc. 82). Westrock incorporates its *Daubert* arguments into the present summary judgment motion. This Court disagrees with Defendants' contention regarding Dr. Truitt, who this Court finds to be qualified to testify as an expert in the field of orthodontic care generally. This Court incorporates relevant portions of its forthcoming denial of Defendants' joint *Daubert* motion to exclude testimony of Dr. Truitt into the present order. Westrock's summary judgment motion is therefore denied as to Count Two's negligence claims about Westrock's alleged failure to engage the Doctor Executive Committee.

### II. Defendants Dr. Moore, the Corporation, and Westrock's Motion for Summary Judgment (Doc. 89)

Defendants Dr. Moore, the Corporation, and Westrock advance three arguments in support of their Motion for Summary Judgment: 1) Plaintiff's conversion claim fails due to lack of property interest in medical records and intent to exercise control; 2) Plaintiff's negligent production of medical records claim fails due to lack of causation evidence; 3) Plaintiff's MMPA claim fails due

9

to lack of standing and absence of unlawful business practices. This Court will address each claim in turn.

### a. Conversion of Medical Records

Count Four of the Amended Complaint brings a charge of conversion against all Defendants for refusal to provide Plaintiff with a copy of her medical records. Under Missouri law, conversion requires proof: "(1) the plaintiff is entitled to possession of the property; (2) the defendant exercised unauthorized control over the property; and (3) the defendant deprived the plaintiff of its right to possession." *Lafayette v. Courtney*, 189 S.W.3d 207, 210 (Mo. Ct. App. 2006) (internal citations omitted). The parties agree that Missouri statute requires Defendants to provide Plaintiff with "a copy of his or her record of that patient's health history and treatment rendered to the person." RSMO § 191.227.1. Any disagreement between the parties appears to concern whether Plaintiff has sufficiently pled she is entitled to *a copy* of her records, rather than the records themselves.

A close read of the Amended Complaint makes clear that Plaintiff's pleadings are adequate. Plaintiff alleges that she is "entitled to possess *a copy* of her dental records" and that she "properly requested *a copy* of her records multiple times." (Doc. 36 at ¶¶ 55, 56) (emphasis added). True, the Amended Complaint later alleges, "the defendants refuse to provide the records" and "Jill has been deprived of the right of possession of her dental records." (Doc. 36 at ¶¶ 57, 58). Plaintiff's use of "a copy of" in various places throughout the text of Count Four, however, makes sufficiently clear that Plaintiff's request sought, and the Amended Complaint concerns, a copy of Plaintiff's dental records, not simply the original medical record. The text of § 191.227.1 makes clear that, provided a proper request, Plaintiff has a possessory interest in a copy of those records. As to the

issue of whether Defendants impermissibly exercised control over any copies of Plaintiff's dental records, material facts remain in dispute. *See, e.g.*, Doc. 114 at ¶¶ 26, 29, 34, 37.

Defendants next contend that judgment as a matter of law is required because it remains undisputed that Defendants did not intend to exercise control of Plaintiff's dental records of copies thereof. Ample dispute over material fact remains, however, as to whether Defendants intended to exercise control over copies of Plaintiff's medical records. *See, e.g.,* Doc. 114 at ¶¶ 34, 37, 38, 39, 40, 43. For these reasons, Defendants' summary judgment motion as to Plaintiff's conversion claim is denied.

### b. Negligent Production of Medical Records

Count Five brings a charge of general negligence against all Defendants related to production of Plaintiff's medical records. Plaintiff alleges that a delay in producing medical records "directly caused or contributed to cause Jill's damage in that defendants' refusal has delayed necessary and appropriate care." (Doc. 36 at ¶ 64). Defendants contend that they are entitled to judgment as a matter of law, as Plaintiff has failed to establish a causal link between any delay in producing medical records and injuries suffered. This Court agrees.

Though Plaintiff argues a delay in production of the records caused a delay in treatment, this appears conclusory and unsupported. Plaintiff concedes: 1) "Dr. Jobst was capable of removing Plaintiff's braces when he first saw Plaintiff on October 12, 2021;" 2) "On October 12, 2021, there was no dental and/or medical reason for Dr. Jobst to wait to start treating Plaintiff;" and 3) "Dr. Jobst did not need Dr. Moore's treatment records to begin treating Plaintiff." (Doc. 104 at ¶¶ 74-76). Given these concessions, it is inconceivable how Plaintiff reasonably believes she could prove her claim that Defendants' negligence, "directly caused or contributed to cause

Jill's damage in that defendants' refusal has delayed necessary and appropriate care." (Doc. 36 at ¶ 64).

In her opposition, Plaintiff appears to switch course and, for the first time, claim that Plaintiff suffered damages in the form of emotional distress. (Doc. 104 at 30-31). Not only is this inconsistent with Plaintiff's pleadings, but under Missouri law, a claim of negligence that results only in emotional distress is recognized as a claim for negligent infliction of emotional distress, which requires the negligent act to have caused a medically-diagnosed condition. *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 568 (Mo. 2006). Plaintiff has not argued such a condition exists. Defendant's summary judgment motion is therefore granted as to Count Five's negligence claim.

### c. Alleged Violations of the MMPA

In Count Six, Plaintiff alleges violations of the MMPA. This Court previously dismissed Plaintiff's Count Six allegations against Westrock due to absence of a joint venture between Westrock and Dr. Moore before November 10, 2021 and no allegation that Plaintiff made any purchase directly from Westrock, as required under the MMPA. This section will therefore evaluate Plaintiff's MMPA allegations against only the remaining defendants, Dr. Moore and the Corporation. Defendants contend that the MMPA claim fails because Plaintiff lacks standing due to absence of ascertainable economic loss and no evidence of unlawful practices.

As for standing, Defendants contend Plaintiff is not a "purchaser" for MMPA purposes because Plaintiff's mother, not Plaintiff herself, paid for Plaintiff's orthodontic services and therefore Plaintiff has suffered no ascertainable economic loss. Though Missouri law is clear that the MMPA requires a plaintiff to have purchased goods or services, a minor child does not lack

12

Case 3:22-cv-05063-MDH   Document 135   Filed 07/10/24   Page 12 of 16

standing simply because a parent has purchased medical services on his or her behalf. Though courts do not appear to have directly addressed this narrow issue, courts have upheld MMPA allegations in which plaintiffs are minor children, ostensibly for whom medical services were purchased by parents or guardians. *See J.J. by & through C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, 675 S.W.3d 259, 266 (Mo. Ct. App. 2023) (reversing dismissal of MMPA claim related to medical services for minor plaintiff); *K.A. by & Through B.W. v. Children's Mercy Hosp.*, No. 4:18-00514-CV-RK, 2019 WL 2144815, at *3 (W.D. Mo. May 16, 2019) (minor plaintiff has standing for MMPA claim related to healthcare services). Though these cases deal with the pleadings stage, they nonetheless support the principle that a minor child does not lack standing simply because a guardian paid for his or her medical services at issue.

This conclusion finds further support in the Missouri Supreme Court's finding that, in the medical malpractice context, "the right to maintain an action to recover medical expenses related to a child's treatment is vested jointly in the child and the parents." *Boley v. Knowles*, 905 S.W.2d 86, 90 (Mo. 1995). Further, the text of the MMPA specifically defines "person" to include "any natural person or his legal representative." RSMO § 407.101.5. Without support, Defendants claim this shows the Missouri Legislature's intent to allow legal representatives—separate from the people they represent—to recover damages made for purchases on behalf of someone else. It proves just as likely, however, that the MMPA defined "person" to include one's legal representatives specifically to allow the person for whom the goods or services were purchased by another to sue for damages. Accordingly, this Court finds Plaintiff does not lack standing simply because Plaintiff's mother paid for the orthodontic services in question, given Plaintiff was a minor child when those services began in 2015.

13

Defendants also claim they are entitled to summary judgment on Count Six because Plaintiff cannot establish that Defendants used unlawful practices in connection with Plaintiff's purchase of orthodontic services. The Amended Complaint clearly alleges misrepresentation on the part of Westrock. Plaintiff alleges, for example, "Westrock touts itself as a group of progressive private practitioners that have banded together to provide the highest quality of care possible through the sharing of ideas, techniques, and management skills utilizing the advantage of doctor-to-doctor consultation." (Doc. 36 at ¶ 7). This Court agrees, however, that Count Six lacks explicit reference to unlawful conduct on the part of Dr. Moore or the Corporation in connection with Plaintiff's purchase of orthodontic services.

It is true that, at one point, Plaintiff alleges that her MMPA allegations are "not limited to" Westrock's misrepresentation of collaborative work and concealment of negligence evidence. (Doc. 36 at ¶ 67). Plaintiff offers no further factual allegations, however, as to what other specific acts she believes may give rise to MMPA violations. It is also true that the Amended Complaint's background section alleges, "throughout this care and treatment, Dr. Moore used flattery and repeated assurances to convince Jill his plan of care was appropriate and reasonable. Because Dr. Moore and Moore P.C. held themselves out as educated and experienced and able to provide high quality dental care, Jill trusted and believed them." (Doc. 36 at ¶ 24). Plaintiff never specifically alleges, however, that this flattery and assurance related at all to Plaintiff's purchasing orthodontic care from Dr. Moore. Instead, the complaint and briefing suggest flattery and reassurance from Dr. Moore began after Plaintiff was already a patient and was used "throughout the years" to quell any concerns Plaintiff may have expressed after Plaintiff was already under Plaintiff's care. (Doc. 104 at 36).

14

In summary judgment briefing, Plaintiff argues Tracie Nation purchased orthodontic services from Dr. Moore and the Corporation, based at least partially on specific recommendations from Dr. Moore, who failed to inform Plaintiff that he had never attempted the space closure method before, nor had he been formally trained in the procedure. (Doc. 104 at 32). But this argument—the source of which is Tracie Nation, Plaintiff's own witness—is not referenced within the Amended Complaint. Plaintiff has never sought leave of this Court to amend the complaint accordingly. This is problematic for any MMPA violation Plaintiff now wishes to bring against Dr. Moore directly, especially given the MMPA's heightened pleading standard. *See Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) ("Claims alleging deceptive practices under the MMPA sound in fraud and are subject to Rule 9(b)'s heightened pleading standard."); *Tuter v. Freud Am., Inc.*, 2022 WL 4636225, at *8 (W.D. Mo. Sept. 30, 2022) (heightened pleading standard applies to MMPA claims sounding in concealment and omissions). For these reasons, summary judgment is entered in favor of Dr. Moore and the Corporation as to Plaintiff's Count Six allegations.

### III. Defendants Dr. Moore and the Corporation's Motion for Summary Judgment Pursuant to Subsection 407.025.3 of the Missouri Revised Statutes (Doc. 106)

In a third summary judgment motion, Dr. Moore and the Corporation seek an order finding in their favor as a matter of law under the Amended Complaint's Count Six. The single argument advanced in this summary judgment motion is the same advanced by Dr. Moore and the Corporation in their 12(b)(6) Motion to Dismiss, which this Court overruled. Regardless, because this Court already dismissed Count Six against all Defendants, Dr. Moore and the Corporation's summary judgment motion is **MOOT**.

## CONCLUSION

For foregoing reasons, Westrock's Motion for Partial Summary Judgment (Doc. 91) is **GRANTED IN PART AND DENIED IN PART**; Dr. Moore, the Corporation, and Westrock's Motion for Summary Judgment (Doc. 89) is **GRANTED IN PART AND DENIED IN PART**; and Dr. Moore and the Corporation's Motion for Summary Judgment Pursuant to Subsection 407.025.3 of the Missouri Revised Statutes (Doc. 106) is **MOOT.** Likewise, Plaintiff's Motion to Strike is **MOOT.** Within the Amended Complaint, Count One remains unaffected; Count Two is dismissed to the extent it alleges Westrock is vicariously liable for Dr. Moore's conduct before November 10, 2021; Count Three is dismissed to the extent it alleges Westrock is vicariously liable for Dr. Moore's conduct before November 10, 2021; Count Four remains unaffected; Count Five is dismissed in its entirety; and Count Six is dismissed in its entirety.

**IT IS SO ORDERED**.

DATED: July 10, 2024                    */s/ Douglas Harpool*
                                        **DOUGLAS HARPOOL**
                                        **UNITED STATES DISTRICT JUDGE**